## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RUBEN C. HOLTON,

      Plaintiff,

      v.

UNITED STATES OF AMERICA,

      Defendant.

CIVIL ACTION NO. 4:22-CV-00070

(SAPORITO, J.)
(CARABALLO, M.J.)

## <u>MEMORANDUM</u>

Now before the court is a report and recommendation of United States Magistrate Judge William I. Arbuckle[1], in which he recommends that the defendant's motion for judgment on the pleadings (Doc. 40) be denied. (Doc. 50). After careful consideration, and for the reasons set forth herein, we will adopt the report and recommendation, as modified herein, as the decision of the court and grant the motion in part and deny it in part.

---

[1] Since Magistrate Judge Arbuckle issued his Report and Recommendation, this case has been reassigned to Magistrate Judge Phillip J. Caraballo as the referral judge on February 13, 2025.

## I.    Factual Background[2]

The plaintiff, former federal inmate Ruben C. Holton, initiated this *pro se* Federal Tort Claims Act ("FTCA") case on January 13, 2022, against the United States of America and three additional individuals: (1) health service administrator Bret Bosious; (2) physician Ellen Liebson-Mace; and (3) Mary M. Spiese.[3] In his complaint, the plaintiff describes a series of events occurring over a twenty-one day period in February and March of 2021. During this period, the plaintiff contracted COVID-19, and allegedly received inadequate treatment. On February 22, 2021, the plaintiff went to sick-call after experiencing chest pain and difficulty breathing. The plaintiff alleges that defendant Spiese "teased/mocked" the plaintiff rather than taking his vitals or administering a COVID-19 test. The plaintiff then sent a message via the TRULINCS system to various members of the prison to inform them of the incident, receiving a reply from one of the doctors that same day

---

[2] While all facts are taken from the plaintiff's complaint (Doc. 1), we have included Judge Arbuckle's recitation of those facts in this section of the memorandum. *See* (Doc. 33; Doc. 50).

[3] All three individual defendants have been dismissed from the plaintiff's complaint. *See* (Doc. 33). Nevertheless, they are still referred to as defendants in this section.

stating that the plaintiff would be seen in the future. The next day, the plaintiff alleges he went to sick-call again with worsening chest pain, where the examining physician told the plaintiff to return if his condition worsened. He further alleges that the physician did not take his temperature and did not test him for COVID-19.

On February 24, 2021, the plaintiff received an email from defendant Liebson-Mace informing the plaintiff that his email had been forwarded to the clinical director and administration. The warden of the prison additionally responded to the plaintiff's email, noting that the plaintiff's chest pain was found to be reproducible. The plaintiff denies this statement as no examination occurred on February 22, 2021. That same day, the plaintiff sent an additional message to defendant Brosious, requesting a switch of his health care provider from defendant Spiese. Defendant Brosious responded to the plaintiff, informing him that his email was forwarded to the clinical director and administration.

On March 2, 2021, the plaintiff tested positive for COVID-19. The plaintiff was subsequently placed in isolation that same day. He was released from isolation on March 15, 2021. The plaintiff alleges that he was not tested for COVID-19 at any point during his isolation or before

his release. He additionally alleges that no one checked on him while in isolation on March 4, March 7, March 13, and March 14. Moreover, the plaintiff contends that he consistently faced a denial of medical care after being released from isolation well into the fall of 2021.

The plaintiff alleges that officials at FCI Schuylkill posted signs from the CDC around the institution instructing inmates to seek medical attention if they experienced trouble breathing or persistent pain or pressure in the chest. The plaintiff states that he followed those instructions but was denied sick-call and a COVID-19 test on both February 22, 2021, and February 23, 2021. The plaintiff alleges that FCI Schuylkill "ranked #1 in the Nation in positive COVID-19 infections" at this time. The plaintiff additionally cites to pages 61–62 in the FCI Schuylkill Orientation Handbook which states that inmates have the right to health services based on the local procedures at their institution, including medical sick call, the right to address any concerns regarding their health care to any member of the institutional staff, and the right to complain of pain and have their pain assessed and treated.

The plaintiff alleges that as a direct and proximate result of the defendants' negligence, he contracted COVID-19, had lingering COVID-

19 symptoms, and suffered pain of mind and body. The plaintiff seeks at minimum $850,000.00 pre- and post-judgment interest, and cost of suit.

## II.    Procedural History

The Court previously adopted a report and recommendation by Judge Arbuckle in its entirety concerning the underlying action. (Doc. 34). The report and recommendation involved a motion to dismiss filed by the United States (Doc. 24), arguing that the Court should dismiss the plaintiff's complaint because the plaintiff failed to file a Certificate of Merit (COM) in compliance with Pa. R. Civ. P. 1042.3. (Doc. 25). Moreover, the United States argued that the plaintiff additionally failed to state a valid negligence claim upon which relief could be granted, and that the plaintiff's complaint lacked subject matter jurisdiction. (*Id.*). Both parties fully briefed the motion (Doc. 25; Doc. 30; Doc. 31), and on August 31, 2023, Judge Arbuckle recommended that the defendant's motion be denied. (Doc. 33). Judge Mannion adopted Judge Arbuckle's report and recommendation in its entirety on September 25, 2023, after neither party filed any objections. (Doc. 34).

Judge Arbuckle's findings, and Judge Mannion's adoptions of those findings, concerning the validity of the plaintiff's negligence claims and

the plaintiff's failure to file a COM remain key issues in the current report and recommendation before the Court. Judge Arbuckle first found that the plaintiff's failure to file a COM in accordance with Rule 1042.3 of the Pennsylvania Rules of Civil Procedure was not a basis to dismiss his FTCA claims. *See* (Doc. 33, at 23). As the Third Circuit held, "Rule 1042.3's certificate of merit requirement does not apply in FTCA cases." (*Id.*) (quoting *Wilson v. United States*, 79 F.4th 312, 316 (3d Cir. 2023)). Therefore, the plaintiff was not required to file a COM to advance his professional negligence claim. Second, Judge Arbuckle found that the plaintiff asserted both medical malpractice claims *and* ordinary negligence claims against the defendants. (*Id.*, at 24). Specifically, Judge Arbuckle held that plaintiff's medical malpractice claims stemmed from the defendants' alleged failure "to follow generally accepted medical standards" when they failed to test the plaintiff for COVID-19 after complaining of COVID-19 symptoms. (Doc. 50, at 13). Moreover, Judge Arbuckle further explained that the plaintiff additionally asserted ordinary negligence claims because FCI Shuylkill failed to "provide suitable quarters and provide for the safekeeping [and] car[e]" of the

plaintiff pursuant to 18 U.S.C. § 4042. (Doc. 33, at 24).[4] Therefore, Judge Arbuckle found that that plaintiff asserted two independent negligence claims rather than a singular claim.[5]

On November 16, 2023, the United States filed a motion for judgment on the pleadings with an accompanying supporting brief. (Doc. 40; Doc. 41). It argued that the plaintiff "has alleged no causal connection between the alleged breaches (failure to administer COVID-19 test) and his purported injury (COVID-19 infection)." (Doc. 50, at 14) (quoting Doc. 41, at 4). Moreover, the United States further argued that "no plausible case could be made that a medical provider's failure to test a person for a viral infection could cause the very viral infection for which the provider did not test." (Doc. 41, at 6). Both parties fully briefed the matter (Doc. 41; Doc. 42; Doc. 43), and on October 28, 2024, Judge Arbuckle filed his

---

[4] For example, the plaintiff alleges that the defendant was "negligent in failing to properly [and] satisfactorily looking into [the plaintiff's] complaint of Chest Pain/Difficulty Breathing." (Doc. 1, ¶ 5i).

[5] As stated above, Judge Arbuckle's report and recommendation concerned additional claims. First, Judge Arbuckle found that the Court had jurisdiction to hear the plaintiff's FTCA claim. Second, he recommended that all claims against the individual defendants (Health Service Administrator Bret Brosious, Physician Ellen Liebson Mace, and Nurse Practitioner Mary M. Spiese) be dismissed. Therefore, once Judge Mannion adopted the report and recommendation, these individuals were dismissed from the case.

report and recommendation, recommending that the defendant's motion be denied. (Doc. 50, at 17). First, Judge Arbuckle found that the United States incorrectly treated the plaintiff's medical malpractice claim as an ordinary negligence claim. *See* (Doc. 50, at 14) ("Rather inexplicably, the United States now treats this claim as an ordinary negligence claim. However, … we made clear in our Report and Recommendation, that Plaintiff is bringing a medical malpractice claim for the failure to administer COVID-19 tests."). Further, Judge Arbuckle reasoned that, "even if the Court were persuaded by the United States' argument, we cannot recommend granting its Motion for Judgment on the Pleadings when the claim its Motion is predicated upon is not a claim in this lawsuit." (*Id.*, at 15). Second, Judge Arbuckle emphasized that the plaintiff not only alleged his injury concerned his contraction of COVID-19, but also that he "dealt [and] is still suffering with lingering perminate [sic] symptoms" and "suffered pain of mind [and] body." (*Id.*, at 16) (quoting Doc. 1, ¶ 6). He noted that the "United States makes no arguments that no plausible case could be made that failure to utilize a diagnostic test increased the risk of having lingering and permanent symptoms or suffering pain of mind and body," as its argument only

focused on the plaintiff's contraction of COVID-19, rather than any additional symptoms. (*Id.*, at 17). Therefore, Judge Arbuckle recommended the denial of the defendant's motion.

On November 7, 2024, the United States filed its objections to Judge Arbuckle's report and recommendation. (Doc. 51). This matter is now ripe for review.

## III.    Standard of Review

"When objections to a report and recommendation have been filed, the court must make a *de novo* determination of those portions of the report to which specific objections are made." *Thompson v. Smeal*, 54 F. Supp. 3d 339, 342 (M.D. Pa. 2014). "When conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge." *United States v. McLaughlin*, 607 F. Supp. 3d 522, 529 (M.D. Pa. 2022); *see also* 28 U.S.C. § 636(b)(1); M.D. Pa. L.R. 72.3; *Thompson*, 54 F. Supp. 3d at 342. A *de novo* determination, however, is not required if the objections are not specific. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984) (per curiam); *McLaughlin*, 607 F. Supp. 3d at 529. At a minimum, uncontested portions of the report and recommendation and general objections must be

reviewed for clear error or manifest injustice. *McLaughlin*, 607 F. Supp. 3d at 529–30; *Thompson*, 54 F. Supp. 3d at 341–42; *Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998).

The defendant has moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Under Rule 12(c), a court must accept all factual averments as true and draw all reasonable inferences in favor of the non-moving party." *U.S. Fid. & Guar. Co. v. Tierney Assoc., Inc.*, 213 F. Supp. 2d 468, 469 (M.D. Pa. 2002) (citing *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)); *see also Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 163 (M.D. Pa. 2007) ("When deciding a motion for judgment on the pleadings, the court is directed to view 'the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the nonmoving party.'") (quoting *Hayes v. Cmty. Gen. Osteopathic Hosp.*, 940 F.2d 54, 56 (3d Cir. 1991)). In deciding a Rule 12(c) motion, we may also consider "matters of public record, and authentic documents upon which the complaint is based if attached to

the complaint or as an exhibit to the motion." *Chemi SpA v. GlaxoSmithKline*, 356 F. Supp. 2d 495, 496–97 (E.D. Pa. 2005); *see also Kilvitis v. Cty. of Luzerne*, 52 F. Supp. 2d 403, 406 (M.D. Pa. 1999) ("In deciding a Rule 12(c) motion, however, a court may take judicial notice of any matter of public record."). Ultimately, "[a] party moving for judgment on the pleadings under Rule 12(c) must demonstrate that there are no disputed material facts and that judgment should be entered as a matter of law." *U.S. Fid. & Guar.*, 213 F. Supp. 2d at 469–470 (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988), and *Inst. For Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991)).

## IV.    Discussion

The crux of Judge Arbuckle's report and recommendation concerns the defendant's failure to distinguish the plaintiff's medical malpractice claim and the plaintiff's ordinary negligence claim. Specifically, as Judge Arbuckle observed, "[t]he United States' arguments for judgment on the pleadings focus on Plaintiff's failure to allege causation under the requirements of an ordinary negligence claim" concerning the defendant's alleged-failure to administer COVID-19 tests. (Doc. 50, at

15). "Plaintiff [,however,] does not bring an ordinary negligence claim for the failure to administer COVID-19 tests" but instead "a medical malpractice claim for the failure to administer COVID-19 tests." (*Id.*, at 13–14). Therefore, Judge Arbuckle recommended denying the motion because the defendant based its motion on a claim that is not a claim in this action. *See* (*Id.*, at 15). We do not dispute this finding, as the defendant indeed mischaracterized the plaintiff's failure to administer COVID-19 tests as one sounding in ordinary negligence, rather than medical malpractice.  Nonetheless, while we agree that this technicality warrants denial of the defendant's motion, we additionally find that the defendant's substantive argument remains unaddressed. Indeed, the defendant's argument was (Doc. 41), and still remains (Doc. 51), that the plaintiff has failed to allege a causal nexus between his alleged injuries and the defendant's purported breaches. We will therefore use this opportunity to directly address the defendant's argument in this memorandum rather than potentially addressing the issue in later stages of the underlying action.

Medical malpractice claims and ordinary negligence claims clearly constitute independent claims. Nevertheless, regardless of the difference,

Pennsylvania law establishes:

> [F]or a party to prevail in a negligence action, *ordinary or professional*, the elements are identical: the plaintiff must establish (1) the defendant owed a duty of care to the plaintiff, (2) that duty was breached, (3) the breach resulted in the plaintiff's injury, and (4) the plaintiff suffered an actual loss or damages.[6]

*Balter v. United States*, No. 3:09-CV-1409, 2014 WL 1365905, at *25 (M.D. Pa. Apr. 7, 2014) (quoting *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 602 Pa. 346, 354, 980 A.2d 502, 506 (Pa. 2009)) (emphasis added). While professional negligence additionally concerns an "unwarranted departure from generally accepted standards of medical practice[s]," *id.* (quoting *Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Super. Ct. 2005)), the basic element of ordinary negligence and professional negligence remains the same: the purported breach must cause the plaintiff's injury. The plaintiff here has alleged two distinct injuries. First, the plaintiff alleges that the defendant's breaches resulted in him "contract[ing] COVID-19." (Doc. 1, ¶ 6). Second, the plaintiff contends that he additionally suffered "lingering perminate [sic] symptoms" of COVID-19 and "pain of mind & body." (*Id.*). The defendant has moved to dismiss the plaintiff's claims,

---

[6] We must note that for purposes of the underlying action, "professional negligence" is synonymous with "medical malpractice."

arguing that the plaintiff has not alleged the necessary facts that the defendant's conduct either caused the plaintiff to contract COVID-19, or in turn, caused the lingering and permanent symptoms of the disease. After reviewing the record before us, we agree with the defendant in part and disagree with the defendant in part. While we find that the plaintiff has failed to plead sufficient facts to show a nexus between his *contraction* of his COVID-19 infection and the defendant's purported breaches, we additionally find that the plaintiff has successfully pled adequate facts to show a nexus between his *lingering and permanent symptoms* of COVID-19 and the defendant's alleged breaches.

A.    **Plaintiff's Alleged COVID-19 Contraction Injury**

The plaintiff alleges the defendant's breaches resulted in him "contract[ing] COVID-19," (Doc. 1, ¶ 6), with "lingering perminate [sic] symptoms" and "pain of mind & body." (*Id.*). When looking at the record before us, however, we find that the plaintiff has failed to plead any facts that support his alleged injury concerning contracting COVID-19.

For example, we first look at the plaintiff's allegations in his medical malpractice claim. The plaintiff argues, as the Court previously reaffirmed, that the defendant "failed to follow generally accepted

medical standards" when it failed to test the plaintiff for COVID-19 after complaining of symptoms. (Doc. 50, at 13); (Doc. 1, ¶ 5). This breach, as the plaintiff argues, resulted in him "contract[ing] COVID-19." (Doc. 1, ¶ 6). However, even assuming the truth of the plaintiff's allegations, we do not see how a failure to test the plaintiff for COVID-19 potentially resulted in the plaintiff contracting COVID-19. A COVID-19 test merely informs a patient whether the patient contracted the disease; it otherwise plays no part in the probability of contracting COVID-19.[7] In turn, even if the defendant had tested the plaintiff for COVID-19, that determination still would have no bearing on the plaintiff's contraction of the illness. These allegations fail to identify any specific facts that show that the plaintiff's injury would not have happened but for the defendant's allegedly negligent conduct.

Moreover, the plaintiff admits in his complaint that he started showing symptoms of COVID-19 prior to the defendant's alleged breach

---

[7] As the defendant stated in its objections, "[t]he occurrence of a suspected COVID-19 infection is logically antecedent to the medical need to diagnose or treat it, meaning that there can be no causal link between the alleged failure to diagnose or treat an infection and the inception of the infection." (Doc. 51, at 5).

of duty.[8] In other words, the plaintiff inherently alleges he contracted COVID-19 before the defendant's alleged breach. Ordinary and professional negligence claims, however, necessitate that the alleged breach *cause* the plaintiff's injury. *See Balter*, 2014 WL 1365905, at *25. Therefore, we find that the plaintiff has failed to allege sufficient facts for his contention that the defendant's failure to follow generally accepted medical standards in testing him for COVID-19 somehow caused the plaintiff to contract COVID-19. Thus, we must grant the defendant's motion for judgment on the pleadings concerning the plaintiff's medical malpractice claim for the plaintiff's COVID-19 injury.

Indeed, this logic additionally applies to the plaintiff's ordinary negligence claims concerning the defendant's failure to provide for the plaintiff's safekeeping and care. The plaintiff alleges that the defendant was "negligent in failing to properly [and] satisfactorily look into [the plaintiff's] complaint of Chest Pain/Difficulty Breathing." (Doc. 1, ¶ 5i). As we have previously found, however, the plaintiff's complaint indicates that he contracted COVID-19 before attempting to seek treatment from

---

[8] *See* (Doc. 1-1, ¶ 5a) ("On 2-22-2021, Plaintiff went to sick-call complaining of chest pain & difficulty breathing.").

the defendant, implying that the plaintiff contracted his COVID-19 injury before the defendant's alleged breach. As a practical matter, an injury that arises before an alleged breach cannot be said to have been caused by that breach. Therefore, on this fact alone, the plaintiff's allegations fail to state a plausible ordinary negligence claim for the contraction of COVID-19.

Nonetheless, even if we assume that the plaintiff had not contracted COVID-19 before his inspection, the defendant's alleged breach still fails to have any bearing on the plaintiff's alleged injury. Similar to a COVID-19 test, a medical inspection merely indicates whether a plaintiff may or may not have a particular medical ailment; it does not contribute towards the contraction of a disease. Indeed, the plaintiff has failed to allege any facts to allow a reasonable factfinder to find that the defendant's failure to investigate the plaintiff's symptoms directly caused the plaintiff to contract COVID-19. For this reason, the plaintiff additionally fails to state a claim concerning his COVID-19 injury.

The plaintiff's allegations that his contraction of COVID-19 stemmed from the defendant's failure to follow guidance from both the

CDC and its own orientation handbook further fails for parallel reasons. *See* (Doc. 1-1, ¶ 5f) ("Defendant posted signs up from the CDC stating: Seek medical attention immediately if you or someone you love has emergency warning signs."); *see also* (Doc. 1-1, ¶ 5g) (stating the handbook provides that "[the plaintiff has] the right to health services … includ[ing] Medical Sick Call … and all support services."). The plaintiff's contraction of COVID-19 seemingly occurred before the plaintiff attempted to seek medical attention. Moreover, even if we accept that the plaintiff had not contracted COVID-19 at that point, the plaintiff has still failed to allege sufficient facts that allow a reasonable factfinder to find that defendant's breach caused his injury of contracting COVID-19. For example, the plaintiff has failed to allege an employee originally exposed him to COVID-19, or how an employee's failure to adhere to medical guidelines exposed him to COVID-19. *See Brown v. United States*, No. 1:22-CV-00404, 2023 WL 2632811, at *15 (M.D. Pa. Mar. 24, 2023) (finding that the plaintiff had failed to "trace[] his exposure to any specific, negligent act or omission to any particular individual at FCI Schuylkill"). Without sufficient facts alleging that his exposure to COVID-19 was caused by the defendant, the plaintiff has failed to provide

a causal nexus between the defendant's actions and contracting COVID-19. For these reasons, we will grant the defendant's motion for judgment on the pleadings concerning the plaintiff's ordinary and professional negligence claims for his COVID-19 contraction injury.

### B.    Plaintiff's Alleged Prolonged and Lingering COVID-19 Symptoms

Our analysis, however, does not end there. As Judge Arbuckle succinctly noted, "Plaintiff alleges as injury not just that he contracted COVID-19, but also that he 'dealt [and] is still suffering with lingering perminate [sic] symptoms,' and that, he 'suffered pain of mind [and] body.'" (Doc. 50 at 16) (quoting Doc. 1-1, ¶ 6). Indeed, we believe that the crux of the plaintiff's complaint engages with potential negligent actions that may have prolonged or enhanced the symptoms of COVID-19 rather than the contraction of the disease itself. The defendant attempts to convince the Court that we should additionally grant its motion for judgment on the pleadings for the plaintiff's claims concerning these prolonged and enhanced symptoms. It argues that these injures "are not additional injuries at all[,]" but "instead, part-and-parcel with (and the physical manifestation of) a COVID-19 infection." (Doc. 51, at 6). We

disagree with this interpretation.

General delays in treatment for illnesses can certainly embody causation for injuries separate from the illness itself. *See, e.g., Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (finding injuries where a prison official "delays necessary medical treatment based on a non-medical reason" or "prevents a prisoner from receiving needed or recommended medical treatment."). In turn, allegations of lingering and permanent symptoms from delayed treatment constitute valid independent causes of action separate from the underlying medical condition. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Nicini v. Morra*, 212 F.3d 798, 815 n.14 (3d Cir. 2000)) (noting liability for inadequate medical care where there was "objective evidence that [a] plaintiff had serious need for medical care" and prison officials ignored the evidence); *see also Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citing *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985)) (finding injuries where "necessary medical treatment is delayed for non-medical reasons."). These types of actions extend to negligence claims under the increased risk of harm standard. *See Corrigan v. Methodist Hosp.*, 234 F. Supp. 2d

494, 501 (E.D. Pa. 2002), *aff'd*, 107 F. App'x 269 (3d Cir. 2004) (discussing increased risk of harm standard); *See also, e.g., Mitzelfelt v. Kamrin*, 526 Pa. 54, 584 A.2d 888, 892 (1990). Therefore, the plaintiff may allege ordinary and professional negligence claims for his prolonged and permanent COVID-19 symptoms, including pain of mind and body, provided that he produces sufficient facts that make plausible the causal nexus between those injuries and the defendant's purported breaches. We find the plaintiff has done so here.

Under an increased risk of harm standard, Pennsylvania law "permits recovery where a defendant's negligence increased the risk of harm to a plaintiff, even if the plaintiff cannot show conclusively that no injury would have occurred in the absence of negligence." *Grundowski v. United States*, No. CIV.A. 3:07-2207, 2012 WL 1721781, at *7 (M.D. Pa. May 16, 2012) (quoting *Lempke v. Osmose Util. Servs., Inc.*, No. 11-1236, 2012 WL 94497, at *3 (W.D. Pa. Jan. 11, 2012)). "If the plaintiff can show an increased risk of harm, then the case may be submitted to a jury to determine whether the increased risk of harm was a substantial factor in causing the injury." *Id.* (citing *Lempke*, 2012 WL 94497, at *3) (citations omitted). Once a plaintiff establishes evidence of conduct giving rise to

an increased risk of harm, that evidence can provide the basis for factfinders to conclude that such increased risk was a substantial factor in bringing about the resultant harm. *Id.* (citing *Corrigan v. Methodist Hosp.*, 234 F. Supp. 2d 494, 502 (E.D. Pa. 2002)). Injuries under the increased risk of harm standard apply to both ordinary negligence and professional negligence claims. *Id.* (citing *Fenney v. Disston Manor Pers. Care Home, Inc.*, 2004 Pa. Super. 114, 849 A.2d 590, 594) (applying the increased risk of causation theory to ordinary negligence actions); *see also Hamil v. Bashline*, 481 Pa. 256, 272, 392 A.2d 1280, 1286 (1978) (applying the increased risk of causation theory to professional negligence claims). Here, the plaintiff must allege sufficient facts to allow a factfinder to conclude that the defendant's negligent act or omission increased the risk of permanent and prolonged COVID-19 symptoms.

The plaintiff argues in his ordinary negligence claim that the defendant breached its duty when it failed to "provide suitable quarters and provide for the safekeeping [and] car[e]" of the plaintiff pursuant to 18 U.S.C. § 4042. (Doc. 1, ¶ 5k). Moreover, in his professional negligence claim, the plaintiff alleges that the defendant breached its duty by failing to "follow generally accepted medical standards" when it failed to test the

plaintiff for COVID-19 after he suffered potential symptoms of the disease. (*Id.*, ¶ 5j). In either claim, however, we conclude that the plaintiff has alleged sufficient facts that make plausible the nexus between the defendant's negligent conduct and the increased risk of prolonged and permanent COVID-19 symptoms.

We find that a reasonable factfinder could find the defendant's alleged failure to "properly & satisfactorily look into [the plaintiff's] complaint of Chest Pain/Difficult Breathing" increased the risk of permanent and prolonged symptoms. (Doc. 1, ¶ 5i). Indeed, a failure to investigate potentially problematic symptoms could delay necessary medical treatment, and in turn, increase the risk that COVID-19 symptoms would worsen without effective medical treatment. Moreover, for similar reasons, we additionally find that a reasonable factfinder could conclude that the defendant's alleged failure to test the plaintiff for COVID-19 departed from "generally accepted medical standards" and directly increased the risk of lingering or permanent symptoms by delaying necessary medical treatment. As stated above, a party moving for judgment on the pleadings under Rule 12(c) must ultimately "demonstrate that there are no disputed material facts and that

judgment should be entered as a matter of law." *U.S. Fid. & Guar.*, 213 F. Supp. 2d at 469–470 (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988), and *Inst. For Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991)). The defendant has failed to do so here. The plaintiff has pled sufficient facts to support his ordinary and professional negligence claims for his prolonged and permanent COVID-19 symptoms, and thus, we will deny the defendant's motion for judgment on the pleadings on this claim.[9]

---

[9] We must note that the defendant believes this interpretation is incompatible with the Court's prior characterizations of Holton's claims. We disagree. The Third Circuit holds only that a plaintiff is not required to file a Certificate of Merit (COM) to advance a claim of medical malpractice under the FTCA. *See generally Wilson v. United States,* 79 F.4th 312 (3d Cir. 2023). This holding, however, does not excuse the plaintiff's burden in proving the requisite elements of a medical malpractice claim, including potential testimony from a medical expert to prevail on that claim. At the pleading stage, however, a plaintiff need only allege sufficient facts to sustain negligence claims for his purported injuries. Here, we find the plaintiff has done so by alleging sufficient facts to create a nexus between the defendant's alleged negligence and his prolonged and enhanced symptoms due to COVID-19. The defendant contends that "[s]uch a claim, of course, could succeed only with an expert opinion to establish to a reasonable degree of medical certainty that the standard of care required an earlier test *and* that delayed diagnosis and treatment of COVID-19 could cause or increase the risk of the alleged permanent complications." (Doc. 51, at 6) (emphasis included). Our holding, however, does not impact the potential viability of the defendant's contention that the plaintiff needs to present expert

*(continued on next page)*

## V.    Conclusion

For the following reasons, we will adopt the report and recommendation as the decision of the court, as supplemented and modified by this memorandum opinion.

An appropriate order follows.


Dated: March 11, 2025                 *s/Joseph F. Saporito, Jr.*
                                      JOSEPH F. SAPORITO, JR.
                                      United States District Judge


---

testimony to ultimately prevail on his claim. We merely note that it is not an appropriate argument under 12(c) of the Federal Rules of Civil Procedure, as this argument invokes matters outside the pleadings. *See* Fed. R. Civ. Pro. 12(d) ("If, on a motion under … Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Therefore, the defendant must pursue this argument under Rule 56 of the Federal Rules of Civil Procedure in a motion for summary judgment.